STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss                          CIVIL ACTION
                                        DOCKET NO. CV-10-464
                                        *N/M) - Cum -11/17/2010*


MARIANNE MCGETTIGAN,
et al.,
              Plaintiffs                 ORDER ON PLAINTIFFS' MOTION
                                         FOR TEMPORARY RETRAINING
        v.                               ORDER AND PRELIMINARY
                                         INJUNCTION

TOWN OF FREEPORT,

              Defendant


The plaintiffs filed a motion for a temporary retraining order and preliminary injunction on 10/1/10. They asked the court to restrain the Town of Freeport from transferring its dispatch services to the Town of Brunswick until the underlying complaint is resolved.

The plaintiffs have failed to make the necessary showing to obtain the relief they seek. The affidavit of Marianne McGettigan does not in any way demonstrate that the plaintiffs will suffer irreparable injury if the injunction is not granted. Bangor Historic Track, Inc. v. Dep't of Agric., 2003 ME 140, ¶ 9, 837 A.2d 129, 132; Ingraham v. Univ. of Maine at Orono, 441 A.2d 691, 693 (Me. 1982). "[P]roof of irreparable injury is a prerequisite to the granting of injunctive relief." Bar Harbor Banking & Trust Co. v. Alexander, 411 A.2d 74, 79 (Me. 1980).

Even assuming for the purposes of argument that the defendant acted in a manner inconsistent with the Town Charter and that establishes irreparable harm, the affidavits of Dale Olmstead, Jr. and Gerald Schofield demonstrate that the transfer took

place on 10/7/10,[1] that the new system is an improvement, and that the harm to the defendant and to the public if the injunction were granted would exceed any harm to the plaintiffs. Bangor Historic Track, ¶ 9, 837 A.2d at 132; Ingraham, 441 A.2d at 693.

The entry is

> The Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction is Denied.

Dated: November 17, 2010

Nancy Mills
Justice, Superior Court

STATE OF MAINE
Cumberland, ss, Clerk's Office

NOV 18 2010

RECEIVED

---

[1] The amended complaint, the McGettigan affidavit, and the plaintiff's memorandum detail the history of the transfer, which was approved by the Town Council on 4/6/10. See Am. Compl. ¶¶ 14, 23, 40-44, 48, 54-63; McGettigan Aff. ¶¶ 6, 9-11, 13-17; Pls.' Mem. at 2-6. In his affidavit, Dale Olmstead states that "[s]ince April of 2010, it has been public knowledge that the Town of Freeport hoped to transfer its dispatch services to the Town of Brunswick effective October 1, 2010, if not sooner." Olmstead Aff. ¶ 4. The plaintiffs first requested injunctive relief on 10/1/10.

OF COURTS
erland County
Street, Ground Floor
id, ME 04101


JUDY METCALF ESQ
EATON PEABODY
PO BOX 9
BRUNSWICK ME 04011


ERK OF COURTS
umberland County
bury Street, Ground Floor
ortland, ME 04101


TIMOTHY O'BRIEN ESQ
62 PORTLAND RD
SUITE 17
KENNEBUNK ME 04043

STATE OF MAINE                              SUPERIOR COURT
CUMBERLAND, ss                              CIVIL ACTION
                                            DOCKET NO. CV-10-464
                                            *N/M - ·  !.\\- 3/29/2011*


MARIANNE McGETTIGAN,
et al.
            Plaintiffs

        v.                                  ORDER ON DEFENDANT'S
                                            MOTION TO DISMISS

TOWN OF FREEPORT,

            Defendant


        Before the court is the defendant's motion to dismiss the plaintiffs' first amended

complaint. The defendant argues that the court lacks subject matter jurisdiction. M.R.

Civ. P. 12(b)(1). For the following reasons, the motion is granted.

BACKGROUND

        In early 2010, the Town of Freeport's Town Council agreed to consider the

possible outsourcing of the majority of its dispatch services to the Town of Brunswick

on a multi-year basis. (First Am. Compl. (Compl.) ¶ 14.) Section 6.10 of the Town of

Freeport's Town Charter prohibits the making of a multi-year contract unless the

contract is made or approved by ordinance. (Id. ¶¶ 15-16.) On April 6, 2010, the Town

of Freeport's Town Council voted to approve the transfer of dispatch services to the

Town of Brunswick. (Id. ¶ 23.) The Town of Freeport's Town Council authorized the

Town of Freeport Town Attorney to develop a contract for the services between the two

Towns and authorized the Town of Freeport's Town Manager to execute the contract.

(Id. ¶¶ 26-29.) On June 29, 2010, the Town of Freeport's Town Manager signed a

contract with the Town of Brunswick pursuant to the Town of Freeport's Town

1

Council's order of April 6, 2010. (Id. ¶ 43.) The contract between the Towns commenced on July 1, 2010 and expires on June 30, 2016. (Id. ¶ 48.)

The Town of Freeport also made a "Capital Payment" to the Town of Brunswick on or about June 29, 2010 in the amount of $122,500.00. (Id. ¶ 44.) Section 6.08 of the Town Charter specifies that supplemental appropriations will be accomplished through the enactment of an ordinance. (Id. ¶ 45.) The Town did not enact an ordinance authorizing the supplemental appropriation of $122,500.00. (Id. ¶ 46.)[1]

On October 7, 2010, the transfer of dispatch services from the Town of Freeport to the Town of Brunswick went into effect. (Olmstead Aff. ¶ 5; Def.'s Ex. A.) The Town of Freeport no longer employs any dispatchers and the Town of Freeport's fire alarm monitors have been transferred to the Town of Brunswick. (Id. ¶¶ 8, 9, 11.)

On October 12, 2010, the Town of Freeport's Town Council voted on and approved an ordinance, which ratified the Interlocal Cooperation Agreement for Dispatch Services between the Town of Freeport and the Town of Brunswick. (Muldoon Aff. ¶¶ 3-7; Def.'s Ex. B.) The ordinance ratified the expenditure of funds

---

[1] The plaintiffs allege that the Town of Freeport residents, pursuant to the Town of Freeport's Town Charter, initiated a petition requesting a referendum to overrule the action of the Town of Freeport's Town Council following the Town Council's vote on April 6, 2010. (Am. Compl. ¶ 54.) The plaintiffs allege there was a personal appearance requirement connected to the petition, which violated the Americans with Disability Act and the Maine Human Rights Act. (Id. ¶ 56.) The Town of Freeport allegedly removed the requirement, but failed to extend the petition period so that individuals with disabilities could have the entire 30-day period to sign the petition. (Id. ¶ 57.) The plaintiffs claim that the Town of Freeport's failure to extend the time period resulted in the failure of the petition and the Town of Freeport's Town Council's action remaining in effect. (Id. ¶ 58.) The Town of Freeport's Town Council and Town Manager were informed on May 11, 2010 that a group of citizens intended to initiate a petition to amend the Town of Freeport's Town Charter to require a provision that dispatch services remain local. (Id. ¶ 59.) On June 15, 2010, pursuant to 30-A M.R.S. § 2104, the Town of Freeport's Town Clerk received a petition bearing the signature of 1,227 Freeport voters. (Id. ¶ 61.) The petition was unsuccessful because it failed to meet the procedural requirements. (Id. ¶ 63.)

2

pursuant to the agreement between the Towns, including the $122,500.00 payment made on or about June 30, 2010. (Id.)

On September 16, 2010, the plaintiffs Marianne McGettigan, Donald Rice and Judith Blanchard filed a complaint for declaratory relief. On October 1, 2010, the plaintiffs filed an amended complaint for declaratory and injunctive relief. Plaintiff McGettigan is a resident of the Town of Freeport and a registered voter who pays taxes to the Town of Freeport. (Am. Compl. ¶ 3.) She is in individual with a disability who "has utilized dispatch services in the past and is fearful and concerned that the outsourcing of this vital function to the Town of Brunswick will have a direct and material adverse impact on her." (Id. ¶ 4.) Plaintiff Rice is also a resident, registered voter and pays taxes to the Town of Freeport. (Id. ¶ 5.) He "is an individual with a medical condition, has utilized the dispatch services of the Town of Freeport in the past, participates in the Reassurance Plan operated on a daily basis by the dispatch services of the Town of Freeport and is fearful and concerned that the outsourcing of this vital function to the Town of Brunswick will have a direct and material adverse impact on him." (Id. ¶ 6.) Plaintiff Blanchard resides in the Town of Freeport, is registered to vote, and pays taxes to the Town of Freeport. (Id. ¶ 7.) The defendant Town of Freeport moves to dismiss the amended complaint on the grounds that the case is moot and, alternatively, that the plaintiffs lack standing to sue.[2]

---

[2] "Mootness and standing are different concepts. Standing to sue means that an individual has a sufficient personal stake in the controversy to obtain judicial resolution." Maine Civil Liberties Union v. City of S. Portland, 1999 ME 121, ¶ 8 n. 5, 734 A.2d 191, 194 n. 5 (citing Halfway House, Inc. v. City of Portland, 670 A.2d 1377, 1379 (Me. 1996)). "Mootness, on the other hand, 'is the doctrine of standing set in a time frame: The requisite personal interest that [existed] at the commencement of litigation (standing) must continue throughout its existence (mootness).'" Id.

3

DISCUSSION

1. Standard of Review

"[W]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." M.R. Civ. P. 12(h)(3). "A party may challenge a court's subject matter jurisdiction at any time during the proceedings." Strout, Payson, Pellicani, Hokkanen, Strong & Levine v. Barker, 2001 ME 28, ¶ 7, 765 A.2d 994, 996. "When a motion to dismiss is based on the court's lack of subject matter jurisdiction, we make no favorable inferences in favor of the plaintiff such as we do when reviewing a motion to dismiss for failure to state a claim upon which relief can be granted." Tomer v. Me. Human Rights Comm'n, 2008 ME 190, ¶ 9, 962 A.2d 335, 338. Further, "the 'court does not draw inferences favorable to the pleader, but should consider any material outside the pleadings submitted by the pleader and the movant.'" Davric Me. Corp. v. Bangor Historic Track, Inc., 2000 ME 102, ¶ 6, 751 A.2d 1024, 1028 (quoting Hodgdon v. U.S., 919 F. Supp. 37, 38 (D. Me. 1996)).

2. Mootness

A case is moot "if the passage of time and the occurrence of events deprive the litigant of an ongoing stake in the controversy although the case raised a justiciable controversy at the time the complaint was filed." Carroll F. Look Constr. Co., Inc. v. Town of Beals, 2002 ME 128, ¶ 6, 802 A.2d 994, 996 (quoting Halfway House, Inc., 670 A.2d at 1379-80). Courts should not address issues "which by virtue of valid and recognizable supervening circumstances have lost their controversial vitality." Leigh v. Superintendent, Augusta Mental Health Inst., 2003 ME 22, ¶ 6, 817 A.2d 881, 883 (quoting In re Faucher, 558 A.2d 705, 706 (Me. 1989)). The test for mootness is "whether there remain sufficient practical effects flowing from the resolution of the litigation to

4

justify the application of limited judicial resources." Halfway House, Inc., 670 A.2d at 1380.

The plaintiffs' claims in the amended complaint are moot because the defendant approved the transfer of dispatch services by ordinance, effectively remedying their procedural errors.[3] Section 6.10(b) of the Town of Freeport's Town Charter states that the Town may enter into a multi-year contract "provided that such action is made or approved by ordinance." (Charter § 6.10(b); Def.'s Opp. to Pl.'s Mot. for TRO, Ex. C. (emphasis added); see also Am. Compl. ¶ 15.) The Town of Freeport ratified its decision to authorize the transfer of dispatch services on October 12, 2010.[4] See Cohen

---

[3] The plaintiffs claim that the defendant cannot ratify a void contract. The cases cited by the plaintiffs to support this claim are distinguishable in that the subject matter of the contract was void at its inception. See Wyman v. Whitehouse, 80 Me. 257, 262, 14 A. 68, 69 (1888) (a woman cannot lawfully enter into a contract and therefore the contract is void); Tillock v. Webb, 56 Me. 100, 101 (1868) (a contract which requires travel on the "Lord's day" is illegal); Portland Tractor Co., Inc. v. Town of Anson, 134 Me. 329, 332, 186 A. 883, 884 (1936) (a municipal contract allowing for "indebtedness or liability incurred beyond the constitutional limit is void and unenforceable"); People's Heritage Bank v. City of Saco, 566 A.2d 745, 746 (Me. 1989) (a municipality's loan guaranty is unenforceable where a statute "clearly requires a municipality to contract for and accept a federal grant before it incurs indebtedness") (emphasis original).

[4] Additionally, the record establishes that the Town of Freeport has transferred its dispatch services to the Town of Brunswick and the Town of Freeport no longer uses its dispatch services. (Olmstead Aff. ¶¶ 5, 8, 9, 11.) The plaintiffs assert that the defendant was on notice that they intended to seek a declaratory judgment as early as September 3, 2010 and, therefore, the defendant acted at its own peril when it transferred its dispatch services. (Pls.' Mem. at 11-14.) Unlike the cases cited by the plaintiffs, the defendant complied with the section 6.10 of the Town Charter. Compare Turney v. Shriver, 269 Ill. 164, 171-72, 109 N.E. 708, 710 (Ill. 1915) (holding that the court may issue an injunction ordering the destruction of a construction project built in violation of covenants in a deed after construction was completed). Even if the defendant proceeded at its own peril in transferring its dispatch services to the Town of Brunswick, the defendant properly ratified its actions by ordinance, pursuant to the Town of Freeport Town Charter. (See Charter § 6.10(b); Def.'s Opp. to Pl.'s Mot. for TRO, Ex. C.; see also Am. Compl. ¶ 15.) Additionally, the court denied the plaintiffs' motion for a preliminary injunction and this motion is not an appeal of that denial. Compare Federal Trade Com. v. Weyerhaeuser Co., 648 F.2d 739, 741 (D.C. Cir. 1981) (where there has been a showing that a merger violates the Clayton Act and where the court found that the requirements for an injunction have been met, the court may bar an already completed merger to restore the status quo), aff'd 665 F.2d 1072 (U.S. App. D.C. 1981); Bastian v. Lakefront Realty Corp., 581 F.2d 685, 691 (7th Cir. 1978) (an appeal of an injunction not moot because the acts sought to be enjoined have been carried out); Ramsburg v. American Investment Co., 231 F.2d 333, 336-38 (7th Cir.

5

v. Ketchum, 344 A.2d 387, 393 (Me. 1975) (appeal dismissed as moot because the holding of election and voter approval of bond issue rendered the question of whether the Court should enjoin the issuance of future warrants calling for future elections hypothetical and academic).[5]

3. Standing[6]

The defendant asserts that plaintiffs cannot maintain this suit because they lack standing, relying on the "established rule that to have standing in a suit against a municipal government, a single plaintiff must claim 'special injury' or seek 'preventive relief.'" McCorkle v. Town of Falmouth, 529 A.2d 337, 338 (Me. 1987). "At a minimum, '[s]tanding to sue means that the party, at the commencement of the litigation, has sufficient personal stake in the controversy to obtain judicial resolution of that

---

1956) (same). Finally, on April 6, 2010, the Town of Freeport's Town Council voted to approve the transfer of dispatch services to the Town of Brunswick. (Am. Compl. ¶ 23.) Since April 2010 it had been public knowledge that the Town of Freeport hoped to transfer its dispatch services to the Town of Brunswick effective October 1, 2010 or sooner. After an unsuccessful petition effort, the plaintiffs presented the Town of Freeport with a draft of their first complaint, in which they did not request injunctive relief. (McGettigan Aff. dated 10/1/10 ¶¶ 13-17.) The plaintiffs filed their amended complaint and motion for injunctive relief until October 1, 2010. (Olmstead Aff. ¶ 4.) The transfer of dispatch services took place October 7, 2010. (Id. ¶ 5.) See Hamm v. Hamm, 584 A.2d 59, 61 (Me. 1990) ("one who comes into a court of equity must come with clean hands").

[5] There are three exceptions to the mootness doctrine. A court may reach the merits of a case if
(1) sufficient collateral consequences will result from the determination of the questions presented so as to justify relief;
(2) the appeal contains questions of great public concern that, in the interest of providing future guidance to the bar and public we may address; or
(3) the issues are capable of repetition but evade review because of their fleeting or determinate nature.
Halfway House, Inc., 670 A.2d at 1380 (citing Foster v. Bloomberg, 657 A.2d 327, 329 n.1 (Me. 1995) (quoting In re Faucher, 558 A.2d at 706). The plaintiffs do not claim that any of these exceptions apply in this case.

[6] The court addresses this issue despite the determination that the first amended complaint is moot.

6

controversy.'" Mortgage Elec. Reg. Sys. v. Saunders, 2010 ME 79, ¶ 7, 2 A.3d 289, 293-94 (quoting Halfway House Inc., 670 A.2d at 1379).

In this case, plaintiffs McGettigan and Rice have standing to sue. They allege a particularized injury because they suffer from a disability and a medical condition and have utilized the dispatch transfer services in the past. (Am. Compl. ¶¶ 4, 6.) Plaintiffs McGettigan and Rice are not simply members of the general public, but actual users of the dispatch services. See Fitzgerald v. Baxter State Park Auth., 385 A.2d 189, 197 (Me. 1978). Additionally, as individuals with disabilities, there is a substantial likelihood that they will use dispatch services in the future. See id. Plaintiff Rice also has standing to sue because he participated on a daily basis in the Reassurance Plan[7] operated by the Town of Freeport and since the Town moved these services to the Town of Brunswick, there has been a significant delay in the program's response time.[8] (Rice Aff. ¶¶ 4, 6-9.) Plaintiff Rice alleges that the outsourcing of the Reassurance Plan has made the program worthless. (Id. ¶ 9.) Plaintiffs McGettigan and Rice have demonstrated a particularized injury to establish standing.

The Town argues, however, that the injury alleged by plaintiffs McGettigan and Rice is hypothetical at best because they cannot show that the transfer of dispatch services causes them more than an abstract injury. Generally, "[o]ne who suffers an

---

[7] As part of the Reassurance Plan, plaintiff Rice called the Town of Freeport dispatch services every day at approximately 7:00 a.m. and spoke to someone who was familiar with his medical condition. (Rice Aff. ¶ 4.) If plaintiff Rice did not call in by 7:30 a.m., the dispatch service would call to check his condition. (Id.)

[8] Because the Town of Freeport transferred its dispatch services, plaintiff Rice now is directed to an automated recording, which requires that he leave his name and a statement of his condition. (Rice Aff. ¶ 6.) The Town of Brunswick dispatch service does not review the tape until 9:30 a.m. (Id. ¶ 7.) On one occasion when plaintiff Rice did not call, the Town of Brunswick dispatch service did not check on his condition until 10:23 a.m. (Id. ¶ 8.)

7

abstract injury does not thereby gain standing to sue." <u>Nichols v. City of Rockland</u>, 324 A.2d 295, 297 (Me. 1974).

> The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy, admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

<u>Id.</u> (quoting <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 240-241 (1937)). Mere displeasure with a decision is not sufficient to establish standing to sue. <u>Nichols</u>, 324 A.2d at 297.

Plaintiffs McGettigan and Rice allege that they are "fearful" that the transfer of dispatch services will affect their future health and safety. It is true that the plaintiffs' fear that the transfer of dispatch services may harm them in the future could be construed as a hypothetical injury. Because plaintiffs McGettigan and Rice also allege that they were users of the dispatch services in the past and suffer from medical conditions, they have demonstrated a "sufficient personal stake in the controversy to obtain judicial resolution of that controversy.'" <u>Mortgage Elec. Reg. Sys.</u>, 2010 ME 79, ¶ 7, 2 A.3d at 293-94.

Plaintiff Blanchard, however, failed to allege any particularized injury except for the allegations that she is a resident of the Town of Freeport and pays taxes. (<u>See</u> Am. Compl. ¶ 7.) Plaintiff Blanchard does not have standing to sue.

The entry is

> The Defendant's Motion to Dismiss is GRANTED. The Plaintiffs' Amended Complaint is DISMISSED.

Date: March 29, 2011

Nancy Mills
Justice, Superior Court

8

MARIANNE MCGETTIGAN ET AL VS TOWN OF FREEPORT
UTN:AOCSsr -2010-0098592                              CASE #:PORSC-CV-2010-00464
--------------------------------------------------------------------------------

01 0000007429            METCALF, JUDY
      167 PARK ROW PO BOX 9 BRUNSWICK ME 04011-0009
      F      TOWN OF FREEPORT                      DEF        RTND      10/01/2010

02 0000003799            O'BRIEN, TIMOTHY
      62 PORTLAND RD SUITE 17 KENNEBUNK ME 04043
      F      DONALD RICE                           PL         RTND      09/16/2010
      F      JUDITH BLANCHARD                       PL         RTND      09/16/2010
      F      MARIANNE MCGETTIGAN                    PL         RTND      09/16/2010